J-A06023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONTAY LEE BAILEY | : | |
| | : | |
| Appellant | : | No. 111 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 16, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007711-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONTAY BAILEY | : | |
| | : | |
| Appellant | : | No. 112 WDA 2022 |

Appeal from the Judgment of Sentence Entered September 16, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001763-2019

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED:  June 7, 2023**

Appellant Montay Lee Bailey appeals from the judgments of sentence imposed following his convictions for third-degree murder and persons not to possess firearms.  On appeal, Appellant challenges the sufficiency and weight

_____

[*] Retired Senior Judge assigned to the Superior Court.

of the evidence, and raises an issue concerning the discretionary aspects of

his sentence. We affirm.

The trial court summarized the underlying facts in this matter as follows:

The [] evidence presented at trial established that on April 13, 2018, Shawn Dillard [(the victim)] was found dead laying near 1845 Cliff Street in the Hill District section of the City of Pittsburgh. The cause of death was multiple gunshot wounds to the head and trunk and the manner of death was homicide. Police were dispatched to that area after gunshots were heard in that area around 10:00 p.m. During the course of the investigation, detectives learned of two witnesses who came forward to provide information about the shooting. Makail Pendleton, who had known [Appellant] for approximately 11 years, encountered [Appellant] when they were both incarcerated at the Allegheny County Jail and they became cellmates. [Appellant] told Pendleton that he shot [the victim] because [the victim] was the brother of Willie Miller. [Appellant] told Pendleton that Willie Miller killed [Appellant's] close friend, Tyrone Noak. Pendleton testified that [Appellant] told Pendleton that [Appellant] shot and killed [the victim] to avenge Noak's murder because [Appellant] could not find [Miller]. [Delfonte Ellis] brought [the victim] to Cliff Street so [Appellant] could find him and shoot him.

Jasmin Goodnight testified that she had a child with [the victim]. . . . Goodnight testified that on April 13, 2018, she dropped [the victim] off with [Ellis]. [The victim] entered [Ellis's] Jaguar and drove off. She learned that [the victim] had been murdered later.

Keirra Walker testified at trial that she was in a rocky relationship with [Appellant]. She testified that [Appellant] would stay with her at times. Just after the shooting, she reached out to detectives and told them that [Appellant] admitted to her that he killed [the victim] with a "head shot." She told detectives about [Appellant's] actions on the date of the shooting and she told them that [Ellis] drove [the victim] to Cliff [Street] where he was shot. Keirra Walker also testified to these facts before the grand jury. At trial, Kierra Walker testified she lied to detectives and before the grand jury because she was angry with [Appellant] at that time.

The Commonwealth presented testimony from FBI [Special] Agent John Orlando who conducted a forensic review of [Appellant's] cell phone records and [Ellis's] cell phone records from the date of the shooting. Cell phone location data established that [Appellant's] cell phone was in the general area of the shooting at the time of the shooting. Cell phone location data also corroborated the fact that [Ellis] and [Appellant] had been communicating prior to the shooting and [Ellis's] phone was in the general area of the shooting at the time of the shooting. The cell site data also confirmed that [Appellant's] location on the day of the shooting was consistent with the information supplied by Kierra Walker during her interviews with law enforcement.

Trial Ct. Op., 6/28/22, at 1-3 (footnote omitted).

Following a bench trial, the trial court convicted Appellant for third-degree murder and persons not to possess firearms.[1] On September 16, 2021, the trial court sentenced Appellant to twenty to forty years' incarceration for third-degree murder and six to twenty years' incarceration for persons not to possess firearms, to be served consecutively.[2] Appellant subsequently filed post-sentence motions, which the trial court denied.

Appellant filed timely separate notices of appeal pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and a court-ordered

---

[1] 18 Pa.C.S. §§ 2502(c) and 6105(a)(1), respectively. The trial court acquitted Appellant of first-degree murder and conspiracy. 18 Pa.C.S. §§ 2502(a) and 903(a), respectively.

[2] At the time of sentencing, Appellant's prior record score (PRS) was five. N.T. Sentencing Hr'g, 9/16/21, at 13. The standard minimum guideline range for third-degree murder was 192 to 240 months' incarceration, with a mitigated range of 180 months (240 months is the statutory maximum); the standard minimum guideline range for persons not to possess firearms was 72 to 90 months, plus or minus 12 months for aggravating or mitigating factors. *Id.* at 14-15. The trial court's judgment of sentence for both offenses was within the standard guideline range.

Pa.R.A.P. 1925(b) statement.[3]  The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

Appellant raises the following issues for our review:

1. Is the evidence of record insufficient as a matter of law to support [Appellant's] convictions for third-degree murder and persons not to possess firearms where the Commonwealth failed to prove beyond a reasonable doubt the essential element of identity; that is, that [Appellant] was the person who possessed a firearm and used it to shoot and kill the decedent?

2. Did the trial court abuse its discretion by denying [Appellant's] motion for a new trial on the grounds that the verdicts were against the weight of the evidence despite the fact that [Appellant's] convictions rested upon the inherently incredible and unreliable testimony of a jailhouse snitch, the recanted out-of-court statements of [Appellant's] spurned ex-girlfriend, and call detail records which were of extremely limited probative value given that no evidence supported the proposition that [Appellant] possessed the phone on the night in question?

3. Did the trial court abuse its discretion by relying on improper facts and/or factors to support [Appellant's] aggregate sentence of 2[6] to 60 years of incarceration?

Appellant's Brief at 7.

## Sufficiency of the Evidence

In his first issue, Appellant challenges the sufficiency of the evidence supporting his convictions for third-degree murder and persons not to possess firearms.  *Id.* at 30.  Specifically, Appellant argues that the Commonwealth failed to present evidence establishing his identity as the perpetrator.  *Id.* at

_____

[3] This Court subsequently consolidated Appellant's appeals *sua sponte*.

35-36. In support, Appellant argues that the Commonwealth's case centered on "three pillars," including: (1) testimony from jailhouse informant Mikail Pendleton, who stated that Appellant confessed to killing the victim; (2) "out-of-court statements [from] Kierra Walker, which she recanted under oath at [] trial;" and (3) Special Agent John Orlando's analysis of the call detail records for the phone numbers associated with Appellant, Appellant's co-conspirator, and the victim. *Id.* at 36.

Appellant first contends that Mikail Pendleton provided testimony that was "so inherently incredible and unreliable as to constitute an illegitimate basis upon which to deprive a citizen of his liberty, in whole or in part." *Id.* at 37. In his brief, Appellant labels Pendleton as the "quintessential jailhouse snitch" whose testimony was "self-serving" and "so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture." *Id.* at 37-41.

Second, Appellant alleges that Kierra Walker recanted her previous statements regarding Appellant's confession to killing the victim. *Id.* at 46. Appellant further argues that Walker was motivated to lie to the police and during her grand jury testimony because she was angry at Appellant and wanted to "punish him for his actual or perceived infidelities, which she referenced numerous times during her interviews to detectives." *Id.* at 47.

Appellant next contends that, "[i]n the absence of testimony that [Appellant] was in possession of the Sprint phone at the time of the shooting, or independent evidence that placed [Appellant] at or near the scene of the

shooting, [Special Agent] Orlando's testimony is of extremely minimal probative value." *Id.* at 52. Appellant further argues that no reasonable inference may be drawn about Appellant's whereabouts at the time the victim was killed; therefore, "[a]ny conclusion that [Appellant] was present at the crime scene is pure speculation." *Id.*

Finally, Appellant argues that Leonard Goggins testified credibly that Appellant was not present in the Hill District at the time the victim was killed. *Id.* The trial court does not address Goggins' testimony in its sufficiency of the evidence analysis in its Rule 1925(a) opinion, instead concluding that Walker's testimony, as corroborated by Pendleton, provided sufficient evidence to establish that Appellant killed the victim. *See* Trial Ct. Op. at 5.

Our standard of review when presented with a sufficiency-of-the-evidence claim is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the

evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Bragg***, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted). Because a sufficiency of the evidence challenge raises a question of law, our standard of review is *de novo*, and our scope of review is plenary.

***Commonwealth v. Mikitiuk***, 213 A.3d 290, 300 (Pa. Super. 2019).

As noted by our Supreme Court:

We have, however, made exception to the general rule that the [factfinder] is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture.

Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution.

This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding.

***Commonwealth v. Karkaria***, 625 A.2d 1167, 1170 (Pa. 1993) (citations omitted and formatting altered).

With respect to identification evidence, this Court has explained:

Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh.

Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

We note that a challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence in that the former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed.

**Commonwealth v. M. Edwards**, 229 A.3d 298, 306 (Pa. Super. 2020) (citations omitted and formatting altered), *aff'd on other grounds*, 256 A.3d 1130 (Pa. 2021).

Here, the trial court addressed Appellant's claim as follows:

While no witness actually observed [Appellant] shoot [the victim], two trial witnesses testified that [Appellant] admitted to killing him. The statements provided by [] Walker to police during her interview were corroborated by her testimony before the grand jury. She solicited the detectives and provided details of the murder without being pressured by anyone. Her demeanor during her recorded statement was calm and she appeared comfortable. The information she supplied concerning [Appellant's] commission of murder [was] corroborated by [] Pendleton. [Appellant] told two different, unrelated people about his motive to avenge Noak's murder.

Trial Ct. Op. at 5.

Based on our review of the record, and in viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to establish Appellant's identity as the perpetrator. **See M. Edwards**, 229 A.3d at 306. As noted by the trial court, two witnesses stated that Appellant confessed to killing the victim to avenge Noak's murder. Specifically, Pendleton testified that Appellant told Pendleton about the victim's murder while Pendleton and

Appellant were incarcerated at the Allegheny County Jail. ***See*** N.T. Trial, 6/1/21, at 72.[4] Additionally, Walker admitted during her trial testimony that she told the police that Appellant told her that he shot the victim. N.T. Trial, 6/2/21, at 35. During Walker's trial testimony, the Commonwealth played a video of her interview with the police. The trial court admitted the video into evidence. ***Id.*** at 51. Walker further testified that she reached out to the police on her own initiative, indicating to the police that she had information, and an interview was subsequently scheduled. ***Id.*** at 52.

As noted above, the determination of whether a witness has testified credibly is a matter reserved solely for the factfinder. ***See Bragg***, 133 A.3d at 331; ***see also M. Edwards***, 229 A.3d at 306. The trial court had the opportunity to hear all the evidence presented by the Commonwealth and defense over the course of the trial and was free to weigh the credibility of each of the witnesses accordingly and believe all or part or none of their testimony. It is not for this Court to substitute its judgment for the factfinder and re-weigh the evidence. ***See Bragg***, 133 A.3d at 330. Accordingly, Appellant is not entitled to relief.

## Weight of the Evidence

In his second issue, Appellant challenges the weight of the evidence. Specifically, Appellant argues that "the sum and substance of the Commonwealth's evidence as to [Appellant's] identity as the person who

---

[4] Pendleton used nicknames in his testimony. "Tizzy" refers to Appellant and "Dough" refers to the victim. ***Id.*** at 71-72.

possessed a firearm and used it to shoot and kill [the victim] was so inherently unreliable, conjectural and inconclusive that, upon meaningful and honest reflection, the verdicts rendered by the trial court should have shocked its own conscience." Appellant's Brief at 54.

When reviewing a weight of the evidence challenge, we are governed by the following standard:

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses. The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility. We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

*Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

> [Appellant's] weight claims essentially challenge [the trial court's] assessment of [the] credibility of Mikail Pendleton and the interview/grand jury testimony of Kierra Walker. [Appellant] also takes issue with the fact that [the trial court] did not credit the testimony of Brandon Williams, Dominique McLaughlin and Leonard Goggins. It is clear that [Appellant's] argument is that [the trial court] should not have rendered a guilty verdict because it should have believed the testimony of his witnesses rather than the evidence presented by the Commonwealth. Inasmuch as [Appellant's] weight claim concedes that the evidence was sufficient to convict in this case and the weight of the evidence claim cannot be based solely on a challenge to the [trial court's] credibility determinations, [Appellant's] weight claim fails. The

- 10 -

trial evidence presented by the Commonwealth has been recounted herein and was credible, competent and reliable and established every element of the offenses of conviction. [The trial court] has reviewed the trial record and believes that the verdict does not shock any rational sense of justice and, therefore, the verdict was not against the weight of the evidence.

Trial Ct. Op. at 7.

Based on our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim. *See Roane*, 204 A.3d at 1001. Appellant's entire weight claim rests on his earlier assertion that the Commonwealth's witnesses were not credible. We will not reweigh or disturb the trial court's credibility determinations on appeal in that Appellant has not shown that the verdict shocks any rational sense of justice. *See id.* Accordingly, Appellant is not entitled to relief on this claim.

**Discretionary Aspects of Sentence**

In his final issue, Appellant raises a challenge to the discretionary aspects of his sentence. Appellant's Brief at 61. On appeal, Appellant argues that the trial court "relied on improper factors when imposing [its] sentence, and reliance on these improper factors led to its imposition of a manifestly excessive aggregate sentence of 26 to 60 years of incarceration." *Id.* at 62. Appellant specifically contends that the trial court improperly considered elements of first-degree murder when it imposed Appellant's sentence, even though the trial court acquitted Appellant of first-degree murder. *Id.* at 65. Appellant further argues that "the trial court's reliance upon this impermissible factor, in whole or in part, resulted in the imposition of a sentence explicitly

designed to keep [Appellant] incarcerated or on supervision until his death—a sentence [Appellant] maintains is manifestly excessive." *Id.* at 65-66.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question

exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record reflects that Appellant preserved his sentencing claim in a post-sentence motion, filed timely notices of appeal, and included the issue in his Rule 1925(b) statement. Appellant has also included a Rule 2119(f) statement in his brief. Further, we conclude that Appellant has raised a substantial question for review. ***See Commonwealth v. Q. Edwards***, 194 A.3d 625, 637 (Pa. Super. 2018) (finding a substantial question for review where the defendant claimed that the trial court relied on an improper factor when imposing its sentence).

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. §§ 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

*Commonwealth v. Raven*, 97 A.3d 1244, 1253-54 (Pa. Super. 2014) (some citations omitted and some formatting altered).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on victim and community, and [the] rehabilitative needs of the defendant." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). Additionally, the trial court "must consider the sentencing guidelines." *Id.* at

- 14 -

848 (citation omitted). Where a PSI report exists, this Court will "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Watson***, 228 A.3d 928, 936 (Pa. Super. 2020) (citation omitted).

Here, Appellant argues that the trial court relied on improper factors which resulted in a manifestly excessive sentence. Specifically, Appellant emphasizes that the trial court labeled the murder as a "cold, calculated" act that was both "vengeful" and "targeted." Appellant's Brief at 64. Appellant argues that the trial court's choice of words at sentencing represented the trial court's "belief that [the murder] was carried out in a **premeditated**, deliberate and retaliatory fashion." ***Id.*** at 63-54 (emphasis added). Further, Appellant contends that the trial court's reliance on these factors was improper because they were consistent with a conviction for first-degree murder, an offense for which Appellant was acquitted. ***Id.***

As we review the merits of Appellant's claim, we must first look to the murder statute for guidance. Indeed, the Crimes Code defines first-degree murder as an "intentional killing." 18 Pa.C.S. § 2502(a). The Crimes Code further defines "intentional killing" as "willful, deliberate and premeditated." 18 Pa.C.S. § 2502(d). Our Supreme Court has held that in order to convict a defendant of first-degree murder, the Commonwealth must prove, *inter alia*, that "the defendant acted with malice and the specific intent to kill." ***Commonwealth v. Parrish***, 77 A.3d 557, 561 (Pa. 2013) (citations omitted).

Second-degree murder addresses criminal homicide committed during the perpetration of a felony, while the Crimes Code defines third-degree murder as "[a]ll other kinds of murder . . . ." 18 Pa.C.S. § 2502(b)-(c). This Court has held that in order to convict a defendant of third-degree murder, the Commonwealth must establish that the defendant "killed an individual with legal malice[.]" **Commonwealth v. Devine**, 26 A.3d 1139, 1146 (Pa. Super. 2011) (formatting altered). The **Devine** Court defined legal malice as "wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty." **Id.** (citations omitted).

Here, at sentencing, the trial court stated:

This was a cold, calculated act in my view. And there are elements of revenge, in this case, there are elements of payback; well, if I can't get one I'll get the other. Certainly, there's an element in this case that we have our own rules on the street. We deal with wrongs to each other on the street. And the way we deal with it is to kill, that's a homicide count.

N.T. Sentencing, 9/16/21, at 16-17.

At the post-sentence motions hearing, the trial court further explained:

The plan, however, in my view as the fact finder didn't -- the evidence didn't indicate that the absolute object of the plan was the killing of [the victim] in this case. I agree that the evidence strongly suggests of a plan to get the victim to a certain place, but what to do with him at that point was still not a solid – there was no solid evidence. It means there could have been a plan to confront. There could have been a plan to do a lot of things.

Once [the victim] was shot, he was shot multiple times, including in the head. That in my view shows a cold, calculating killing. I

did not use the word "premeditated" on purpose. Calculated is different than premeditated.

You shoot a guy once. You don't need to put two more in. You really shouldn't – of course, you don't need to put any in him. I don't mean to minimize that.

If you do the wrongful act of shooting somebody, and you continue to shoot in my view demonstrates cold calculation at that point. That's why I used the words I did. Absolutely did not use the word "premeditated," and that's the reason the Commonwealth didn't get a murder in the first degree conviction in this case.

N.T. Post-Sentence Motion Hr'g, 12/17/21, at 27-28.

In its Rule 1925(a) opinion, the trial court further explained its sentence as follows:

The record in this case supports the sentence imposed by [the trial court]. The sentences imposed on each count were within the standard range of the sentencing guidelines. Additionally, [the trial court] considered the [PSI] report as noted at the beginning of the sentencing proceeding. Based on the totality of the circumstances, [the trial court] believed [Appellant] was a danger to the community. [Appellant] used a firearm in the instant offense when he clearly knew he was not permitted to possess a gun. As noted in the [PSI r]eport, [Appellant] was charged with possessing a synthetic narcotic in the Allegheny County Jail. [Appellant] refuses to honor the law. [The trial court] viewed the murder in this case as a cold, calculated and vengeful act. It was a targeted act against an innocent victim. [Appellant] committed an abhorrent act of "street justice." [The trial court] considered [Appellant's] rehabilitative needs, protection of the public from committing such crimes, retribution and the impact on the victim. Though the sentences were imposed to run consecutively, the minimum sentences imposed in this case were within the standard range of the sentencing guidelines and were not unduly harsh and properly reflected [Appellant's] culpability in this case.

Trial Ct. Op. at 14.

Based upon our review of the record, we discern no abuse of discretion by the trial court. **See Raven**, 97 A.3d at 1253-54. The record reflects that the trial court stated its consideration of the factors from Section 9721 including the protection of the public, the gravity of offense, and Appellant's rehabilitative needs. **See Fullin**, 892 A.2d at 847; 42 Pa.C.S. § 9721(b). Additionally, the trial court had the benefit of a PSI report, and we may presume it was aware of relevant information regarding Appellant's character and weighed those considerations along with mitigating statutory factors. **See Watson**, 228 A.3d at 936. Moreover, the record reflects that the trial court did not consider the victim's killing to be premeditated. Instead, the trial court described the murder as cold, calculated, vengeful, and targeted, which is consistent with this Court's jurisprudence defining the elements of third-degree murder. **See Devine**, 26 A.3d at 1146. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2023

- 18 -